IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DEENIE VENEICE SINGLETON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:15-CV-0268 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

# REPORT AND RECOMMENDATION
## TO REVERSE DECISION OF THE COMMISSIONER and REMAND FOR FURTHER PROCEEDINGS

Plaintiff DEENIE VENEICE SINGLETON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security income benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

## I.
## THE RECORD

On August 22, 2012, plaintiff filed an application for SSI benefits.[1] (Tr. 197-204). On August 24, 2012, plaintiff completed a disability report alleging her ability to work had been limited

---

[1] Plaintiff's application was signed August 31, 2012. (Tr. 204). The ALJ found plaintiff protectively filed the application on August 24, 2012. (Tr. 44).

since July 13, 2007, her disability onset date, due to the following conditions: a carcinoid tumor of the small intestine; degenerative disc disorder; asthma; back, arm, and leg pain secondary to a motor vehicle accident (MVA); cognitive deficits secondary to a MVA; high blood pressure; emphysema; and colon diverticulitis. (Tr. 232-39). Plaintiff alleged the conditions limited her ability to work in that her asthma causes problems "when the weather changes," she is "not able to walk or stand for long periods of time" because she will be "out of breath" and will have to use a "breathing machine," she has to constantly check her blood pressure throughout the day, and some days she does not have the strength to do anything. (Tr. 213). Plaintiff advised that leg and back pain keeps her from sleeping and prevents her from being able to lift, squat, bend and reach, or walk or stand for long periods of time. (Tr. 214, 218). Plaintiff advised she is able to prepare small meals, do some inside household chores, drive a car, shop for groceries, perform financial obligations, read, socialize, and attend doctor appointments alone. (Tr. 215-17). Plaintiff advised she has no problems paying attention or finishing what she starts, is able to follow written instructions if able to review them and follow spoken instructions if she is able to write them down, and is able to handle stress and changes in routine. (Tr. 218-19).

On October 17, 2012, the Social Security Administration denied benefits initially and, on January 28, 2013, denied benefits upon reconsideration. (Tr. 96-102; 104; 105-12; 113; 115; 119; 126).

On April 10, 2014, an administrative hearing was held by videoconference before an Administrative Law Judge (ALJ). (Tr. 58-95). Medical records provided to the ALJ prior to the hearing to support plaintiff's claims included records dated from May 7, 2006 - October 16, 2013 and reflected, *inter alia*, a history of intestinal cancer, hypertension, degenerative disc disease of the

lower back, COPD, edema of the lower extremities, and asthma.

In his opening statement, plaintiff's counsel pointed to plaintiff's "pretty severe COPD," pre-surgery abdominal pain, injuries to her back, arm, leg and head sustained in a 2007 MVA, arthritis in her back, and obesity as plaintiff's disabling conditions. Counsel opined plaintiff's combination of impairments limit her to sedentary work. (Tr. 61-62).

Plaintiff testified at the video hearing concerning her impairments and the limitations caused by such impairments. (Tr. 62-86). As of the date of the hearing, plaintiff was 52 years old. (Tr. 63).

A vocational expert (VE) also testified at the hearing, identifying plaintiff's past work as a liquor store stock clerk (heavy, SVP 4) and a screen printer (light, up to medium as performed, SVP 3). (Tr. 87). The ALJ then posed a hypothetical to the VE of (1) a 45-year-old female as of the alleged onset date, (2) with a GED, (3) a good ability to read, write, or use numbers, (4) with the ability to perform light and/or sedentary work activity, (5) who can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds, (6) who can stand and/or walk with normal breaks for a total of six hours in an 8-hour work day, (7) who can sit with normal breaks for up to six hours in an 8-hour work day, (8) is unlimited, except as restricted by the category of light work, as far as using her hands for hand controls, and feet for feet controls, (9) who has no postural, *manipulative*, visual or communicative limitations, (10) with environmental limitations of a reasonably clean air and temperature controlled environment, (11) with the ability to remain attentive, reasonably alert, and responsive in a work setting and carry out orders satisfactorily, and (12) plaintiff's past work history. Based on this hypothetical, the VE testified such a person would be able to return to the past work of screen printer as it is customarily performed, *i.e.*, as light work.

(Tr. 87-88).

The ALJ, "[m]oving to step 5 of the sequential evaluation process" and confirming that plaintiff has no transferrable skills, then asked the VE to identify "jobs at light or sedentary – preferably at light at the step 5, unskilled level." (Tr. 89). The VE testified examples of such light jobs would be a sales attendant, an office helper, and a furniture rental clerk, noting the examples were "a sampling" and not a conclusive list. (Tr. 89-90).

The ALJ then posed a second hypothetical to the VE of (1) a 45-year-old female as of the alleged onset date, (2) with a GED, (3) a good ability to read, write, or use numbers, and (4) assuming all the hearing testimony to be credible and substantially verified by third-party medical evidence. (Tr. 90). The VE testified that such a person could not perform any of the past relevant work identified, or perform any of the other jobs identified as examples in the first hypothetical. The VE summarized plaintiff's testimony to be that she is able to stand for only 2 minutes at a time, that while standing, she is "bent or stooped over," that while sitting, she must "slouch over for a few minutes before she can get back up to a standing position," that she coughs a lot causing fatigue, must use a nebulizer 4-5 times a day at 30 minutes each, and that her "memory is extremely short where it comes to instructions or remembering tasks." (Tr. 90-91). The VE explained that assuming such testimony was credible and verified, that it would be difficult for such a person "to maintain employment on a competitive, full-time basis." (Tr. 91).

Plaintiff's counsel then posed a hypothetical to the VE of a person (1) limited to lifting 20 pounds occasionally and 10 pounds frequently; (2) who needs a sit-stand option in 20-minute intervals, and (3) has postural limitations of no bending or stooping, and only occasional climbing ramps and stairs, but no ladders, ropes, or scaffolds. The VE testified such a person would not be

able to perform any of plaintiff's PRW or any other light work. (Tr. 91-92). Referencing the ALJ's first hypothetical, counsel added the additional limitation that the individual's pace of performing activities was reduced to 50% of the average worker. In response the VE testified such an individual, "if she's not able to keep up with the demands of the employer, she would not be able to maintain employment." (Tr. 92). Counsel then posed a new hypothetical to the VE of an individual (1) limited to standing and walking six hours of an 8-hour work day, (2) limited to sitting six hours of an 8-hour work day, (3) able to lift and/or carry only 10 pounds occasionally, and (4) with a requirement to alternate sitting and standing at 20-minute intervals. (Tr. 92-93). The VE testified that such an individual would not be able to perform plaintiff's PRW or any other light work with these restrictions. (Tr. 93).

On May 23, 2014, the ALJ rendered an unfavorable decision, finding plaintiff had not been under a disability, as defined in the Social Security Act, since August 24, 2012, the date the SSI application was filed. (Tr. 41-53). The ALJ found plaintiff had not engaged in substantial gainful activity since August 24, 2012, the application date. (Tr. 46). The ALJ determined plaintiff had the following severe medical impairments: cancer of the small intestine, status post-surgery; degenerative disc disease of the lumbar spine; and asthma.[2] (*Id.*). The ALJ determined, however, that plaintiff's impairment or combination of impairments did not meet or equal any listed impairment. (Tr. 47).

The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms were "not entirely credible," and that the third-party statements of plaintiff's

---

[2] After considering the "paragraph B" criteria for evaluating mental disorders, the ALJ determined plaintiff's cognitive defects secondary to MVA did not cause more than minimal limitation to plaintiff's ability to perform basic work activities and was not severe. (*Id.*).

mother were "somewhat but not entirely credible." (Tr. 49, 50). The ALJ further noted that plaintiff had not worked and had not attempted to find work since 2007, but that even prior to her alleged onset date, plaintiff's work record was "sporadic at best" and that "[s]uch work history may indicate an individual that chooses not to work or [is] not motivated to work."

The ALJ found that, through the date of her SSI application, plaintiff retained the residual functional capacity (RFC) – the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks – to perform light work with the following limitations: no concentrated exposure to odors, fumes and gases; work must be in a clean air environment; and *only occasional manipulation.* (Tr. 48). The ALJ noted the RFC assessments of the non-examining medical consultants with the State Disability Determination Division completed on October 17, 2012 and January 28, 2013, *viz.*, that plaintiff had the capacity to perform less than a full range of light work activity, and gave such opinion evidence great weight. (Tr. 50, 51). The ALJ found the RFC was consistent with the medical evidence and the non-examining medical consultant opinions, and that while he did not discount all of plaintiff's complaints, he believed the evidence demonstrated plaintiff's impairments were not of the level of severity that would prevent her from participating in substantial gainful activity given the above RFC. (Tr. 51).

The ALJ then stated the VE testified "based on the above residual functional capacity assessment," that plaintiff can perform her past relevant work (PRW) as a screen printer. (Tr. 51). The ALJ stated he concurred with the VE's opinion, and that in comparing plaintiff's RFC "with the physical and mental demands of this work," he found plaintiff is able to perform her PRW as a screen printer as it is generally performed.

Although he found plaintiff was capable of performing her PRW, the ALJ also found there are other jobs existing in the national economy that she is also able to perform. The ALJ then made "alternative findings for step five of the sequential evaluation process," *viz.*, that based upon the VE's testimony, "there are other jobs existing in the national economy that [plaintiff] is also able to perform," listing as "representative occupations" the jobs of sales attendant, office helper, and furniture rental clerk. (Tr. 51-53). The ALJ cited the Dictionary of Occupational Titles (DOT) code for each job and further determined that the VE's testimony was "consistent with the information" contained in the DOT. (Tr. 52-53). The ALJ concluded, "[b]ased on the testimony of the vocational expert" and considering plaintiff's RFC, that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, thus, a finding of "not disabled" was appropriate. (Tr. 53). The ALJ specifically found plaintiff had not been under a disability, as defined by the Act, since August 24, 2012, the date plaintiff's application for SSI was protectively filed.

On September 9, 2014, November 5, 2014, December 1, 2014, and January 8, 2015, plaintiff's representative submitted additional post-hearing medical records dated April 11, 2014 - November 5, 2014 to the Appeals Council, requesting such "new evidence" be incorporated into plaintiff's record "for due consideration" of her claim. (Tr. 6; 9; 11; 17; 33; 491). On July 13, 2015, the Appeals Council denied plaintiff's request for review. (Tr. 1-5). The Appeals Council stated it "looked at" various medical records dated July 11, 2014 through November 5, 2014 but noted the ALJ decided plaintiff's case through May 23, 2014 and the new information was about a later time and, therefore, did not affect the decision about whether plaintiff was disabled on or before May 23, 2014. (Tr. 2).

Upon the Appeals Council's denial of plaintiff's request for review on July 13, 2015, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ found plaintiff not disabled at step four and, alternatively, at step five of the five-step sequential analysis. Consequently, this court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the findings that plaintiff had the ability to perform PRW as a screen printer, or that other work exists in significant numbers in the regional and national economies that plaintiff is capable of performing, and whether proper legal standards were applied in making this determination. Plaintiff raises the followings grounds for reversal of the acting Commissioner's decision denying plaintiff Social Security disability benefits:

1. The ALJ committed reversible error by relying on the VE's response to a defective hypothetical question in that it was less restrictive than the RFC the ALJ ultimately issued in his decision;

2. The ALJ reversibly erred by not resolving a conflict with the DOT which indicated that the upper extremity and pulmonary limitations the ALJ adopted in his RFC finding would preclude the PRW the ALJ found plaintiff could perform, as well as two of the three alternative jobs the ALJ identified at step 5; and

3. The Appeals Council's admission of new evidence diluted the record when that evidence indicated ongoing treatment for low back pain and instability of the left knee, which the ALJ did not have the opportunity to review.

IV.
MERITS

*A. Defective Hypothetical Question*

Plaintiff contends the ALJ relied on vocational testimony in response to a hypothetical question that failed to include all of the *manipulative limitations* the ALJ later identified in his RFC. Plaintiff argues this requires remand because "a determination of non-disability based on such a defective question cannot stand."

In her responsive brief, the Commissioner "concedes that the ALJ erred by providing a hypothetical RFC to the vocational expert that differed from the RFC in the ALJ's decision." The Commissioner notes the ALJ's decision limits plaintiff to only *occasional manipulation* while the hypothetical RFC to the VE included no manipulative limitations and, as a result, "concedes that substantial evidence does not support the ALJ's determinations that Plaintiff could perform her past relevant work as a screen printer [at step four], or the jobs of sales attendant and office helper [at step 5], because these jobs require more than *occasional manipulation*." (emphasis added). The Commissioner contends, however, that the ALJ's errors are harmless because the VE also listed furniture rental clerk as other work plaintiff can perform, and plaintiff has conceded in her brief [p. 17] that this job allows for only *occasional* reaching, handling, or fingering which is consistent with the RFC "occasional manipulation" limitation. The Commissioner argues that because the ALJ properly determined plaintiff can perform other work as a furniture rental clerk, substantial evidence supports the finding at step 5 that plaintiff can perform other work. The Commissioner contends remand is required only when identified errors compromise substantial evidence to support the decision, and that remand here would be a waste of time because the ALJ and the VE cited to other work consistent with plaintiff's RFC.

In her reply, plaintiff argues that when an ALJ relies upon VE testimony based upon a defective hypothetical, the decision, as a matter of law, is without substantial evidence and must be reversed and remanded. Plaintiff contends substantial evidence review of the Commissioner's decision does not involve a harmless error analysis because if the decision is not supported by substantial evidence, as here, the issue of harm is irrelevant and the plaintiff need not show prejudice. For the reasons set out hereafter, it is not necessary for the court to determine whether the harmless error doctrine is applicable in situations in which an ALJ relies on a VE's answers to a

defective hypothetical because, under the circumstances here, the court does not find the error to be harmless.

Any hypothetical question posed by an ALJ to a VE should reasonably incorporate the claimant's limitations as recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). An ALJ needs full and accurate testimony from a VE if he is to properly rely on such testimony to support his determination as to a claimant's disability. Here, at both step four and step five of the sequential analysis, the ALJ relied exclusively upon VE testimony, based upon a defective hypothetical, to find plaintiff not disabled. The VE did not testify one way or the other about the manipulative requirements of a furniture rental clerk, the only other work identified by the VE not specifically excluded by the DOT when the RFC's occasional manipulation limitation is applied. Nor did the ALJ address or state her opinion regarding the manipulative requirements of such a job. The court agrees with plaintiff that there is no guarantee the VE would have agreed with the DOT's characterization of the furniture rental clerk job as requiring only occasional manipulation.[3] Neither the DOT nor the VE testimony is *per se* controlling. *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). When conflict arises, an ALJ is permitted to rely on the VE testimony over the DOT if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT. *Id.* The court further agrees with plaintiff that in order to find plaintiff was not harmed would require the court to assume or speculate that the VE would have agreed with or relied on the DOT's job description of a furniture rental clerk requiring only occasional manipulation and that the ALJ would then have not only relied on the VE's testimony, but would have found that single job adequate to deny benefits. The undersigned has no basis in the record to

---

[3] At plaintiff points out, the DOT listing of tasks of a furniture rental clerk requires substantial paper work and that such a task would typically require *substantial* fine and gross manipulation. It would not be unreasonable for the VE to be of the opinion that more than *occasional* manipulation would be required by the furniture rental clerk job.

support such an assumption. This court simply cannot speculate how the VE would have responded if the hypothetical had included the *occasional* manipulative limitation ultimately found by the ALJ as part of plaintiff's RFC, nor can this court speculate how the ALJ would have ruled if the VE's testimony was based on a non-defective hypothetical. It may very well be that the VE would have testified that a furniture rental clerk would be other work consistent with a corrected hypothetical incorporating plaintiff's manipulative limitations, however, it could also be just as likely that the VE would not have so testified. This court cannot make an assumption one way or the other. Further, this court cannot assume the ALJ would have found plaintiff was not under a disability since August 24, 2012 and would have denied benefits. Harmless error analysis would seem to presume an ALJ would be predisposed to find a claimant not disabled and ineligible for benefits and that is not the case. The ALJ acts as an independent adjudicator and should not be considered prone to deny benefits. Affirmance would require too much speculation by the court as to what the VE and/or ALJ would have done.

The undersigned finds the ALJ's reliance on VE testimony based on a defective hypothetical was reversible error. Specifically, the Commissioner's decision is not supported by substantial evidence because the ALJ relied on the VE's answers to a hypothetical that failed to incorporate all of plaintiff's limitations, namely a limitation of being capable of only *occasional* manipulation, which the ALJ had found in the RFC.

### B. *Remaining Claims*

Plaintiff asserts additional claims arguing the ALJ committed reversible error, to wit: that the DOT directly conflicts with the ALJ's finding that plaintiff can perform her PRW as well as other work despite her manipulative and environmental limitations and the ALJ never resolved this

conflict, and that the new evidence she submitted to the Appeals Council dilutes the ALJ's finding that plaintiff can perform a good deal of standing and walking because it indicated instability of the left leg and an unstable gait. Because the undersigned is recommending reversal based on plaintiff's first claim, it is not necessary to address these remaining claims.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff DEENIE VENEICE SINGLETON not disabled and not entitled to a period of disability benefits be REVERSED and the case REMANDED for further proceedings consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this  9// day of September 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the

event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).